UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

MATTHEW S.,[1]

        Plaintiff,

   v.                                 21-CV-00220-LJV
                                                  DECISION & ORDER

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

———————————————————

On February 8, 2021, the plaintiff, Matthew S. ("Matthew"), brought this action

under the Social Security Act ("the Act"). Docket Item 1. He seeks review of the

determination by the Commissioner of Social Security ("Commissioner") that he was not

disabled.[2] *Id.* On January 3, 2022, Matthew moved for judgment on the pleadings,

Docket Item 7; on May 5, 2022, the Commissioner responded and cross-moved for

———————————————————

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Matthew applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on his quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

judgment on the pleadings, Docket Item 8; and on June 16, 2022, Matthew replied, Docket Item 9.

For the reasons that follow, this Court denies Matthew's motion and grants the Commissioner's cross-motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

determination made according to the correct legal principles."  *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.    ALLEGATIONS

Matthew argues that the ALJ erred in two ways.  *See* Docket Item 7-1.  First, he argues that the ALJ erred "by impermissibly relying upon his own lay judgment as a basis for the physical portion of the RFC[4] finding after rejecting all of the opinion evidence related to [Matthew's] physical impairments and limitations."  *Id*. at 8.  Second, he argues that the ALJ erred by failing "to further develop the record after rejecting all of the medical opinions of record related to [Matthew's] physical impairments."  *Id*. at 12. This Court disagrees and therefore affirms the Commissioner's finding of no disability.

### II.   ANALYSIS

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).  But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019).  As long as the

---

[4] A claimant's residual functional capacity ("RFC") "is the most [he] can still do despite [his] limitations . . . in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (Jul. 2, 1996)).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id*

ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error.  *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

Matthew argues that because the ALJ rejected all opinions assessing Matthew's physical limitations, the ALJ necessarily relied on "his own lay judgment" in crafting the RFC.  *See* Docket Item 7-1 at 10.  And Matthew says that the ALJ therefore erred in rejecting both opinions in the record assessing Matthew's physical limitations: an opinion by a consultative examiner, Nikita Dave, M.D., Docket Item 6 at 540-44, and a prior administrative finding by a state agency consultant, Gary Ehlert, M.D., *id.* at 69-71. See Docket Item 7-1 at 10.

Dr. Dave examined Matthew on July 25, 2018, and he opined that "[b]ased on [Matthew's] history of falling asleep at the wheel, most likely he should not drive."  *Id.* at 544.  But Dr. Dave concluded that Matthew had "[n]o other limitations based on the physical exam today."  *Id.*  The ALJ found Dr. Dave's opinion unpersuasive because it was "not fully consistent with the evidence."  *Id.* at 29.  According to the ALJ, Dr. Dave's "limitation for driving [was] supported by [Matthew's] history of sleep apnea," but "additional exertional limitations and restrictions for exposure to environmental factors"

were needed to address Matthew's physical health issues.  *Id.; see also id.* at 25 (RFC incorporating Dr. Dave's limitation on driving among other limitations).[5]

Dr. Ehlert found that Matthew should "[a]void even moderate exposure" to environmental hazards, such as machinery or heights.  *See* Docket Item 6 at 70.  But Dr. Ehlert concluded that Matthew otherwise had no exertional, postural, manipulative, visual, or communicative limitations.  *Id.*  As the ALJ found for Dr. Dave's opinion, the ALJ accepted Dr. Ehlert's limitations but otherwise found the opinion unpersuasive because "[a]dditional functional limitations [were] appropriate."  *Id.* at 29*; see also id.* at 25 (RFC incorporating Dr. Ehlert's limitation on exposure to hazards among other limitations).

So the ALJ accepted the limitations in the opinions of Dr. Dave and Dr. Ehlert, but he nevertheless found those opinions unpersuasive because Matthew had *more* physical limitations than those about which the two physicians opined.  *See id.* at 29.

---

[5] The ALJ found that Matthew had the RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), which involves lifting or carrying up to 20 pounds occasionally and 10 pounds frequently, with the following additional limitations:

> He could stand or walk up to six hours, and he could sit up to six hours, in an eight-hour workday.  [He] could frequently climb ramps and stairs, but never climb ladders, ropes[,] or scaffolds.  [He] could frequently balance, stoop, kneel, crouch[,] or crawl.  He could have no more than frequent exposure to extreme cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation.  He could never be exposed to vibration or hazards, such as machinery and heights.  [He] could never drive commercially.  [He] is further limited to simple, routine, [and] repetitive tasks; limited to making simple, work-related decisions; no supervisory duties; and occasional interaction with coworkers, supervisors[,] and the public.

Docket Item 6 at 25.

The ALJ certainly did not err by concluding that Matthew was *more* restricted in his ability to perform work-related activities than Dr. Dave or Dr. Ehlert found him to be. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020); *see also Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("It appears the ALJ credited Plaintiff's testimony that she could not focus and was easily distracted . . . and assessed a more generous limitation of 5% off-task time.  The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand.").  And the ALJ therefore did not impermissibly "substitute his own expertise or view of the medical proof for the [opinions of Dr. Dave and Dr. Ehlert]" to Matthew's disadvantage. *See Greek v. Colvin*, 802 F.3d 370, 376 (2d Cir. 2015).[6]

What is more, the ALJ's treatment of Dr. Dave's and Dr. Ehlert's opinions did not create an evidentiary gap in the record that the ALJ was obligated to fill.  "Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative duty to develop the administrative record."  *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  But "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim."  *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1983) (internal quotation marks omitted); *see*

---

[6] Contrary to Matthew's argument, *see* Docket Item 7-1 at 10, the ALJ did not "reject" Dr. Dave's and Dr. Ehlert's opinions, *see, e.g.*, Docket Item 6 at 26 (citing Dr. Dave's opinion during the analysis of Matthew's subjective complaints).  *See generally Larson v. Comm'r of Soc. Sec.*, 2020 WL 5018331, at *6 (W.D.N.Y. Aug. 25, 2020) (holding that ALJ did not "reject" opinion by assigning it "partial weight").  In fact, as noted above, the ALJ incorporated Dr. Dave's limitation for driving and Dr. Ehlert's limitation for environmental hazards in the RFC.  *See* Docket Item 6 at 25.

*also Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (holding that an ALJ "is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability." (internal quotation marks and citation omitted)).

Here, there were no gaps.  The ALJ had adequate medical records and opinions from which to make a reasoned RFC determination.  Matthew points to evidence in the record he believes needed to be assessed by "further development of the record."  *See* Docket Item 7-1 at 11.  But that evidence was explicitly considered by the ALJ, *see* Docket Item 6 at 23, and Matthew does not explain why the ALJ's RFC determination was insufficient absent further development of the record, *see Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018).  *See also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) ("Where, however, 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity,' a medical source statement or formal medical opinion is not necessarily required[.]" (first brackets in original) (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013))).

In fact, the opinions of Dr. Dave and Dr. Ehlert were sufficient for the ALJ to conclude that Matthew had only the minimal limitations about which they opined.  But the ALJ instead chose to give Matthew the benefit of the doubt and to impose additional restrictions consistent with Matthew's complaints and the medical records.  By no stretch of the imagination was that an error to Matthew's disadvantage.  *See Ramsey*, 830 F. App'x at 39; *Lesanti*, 436 F. Supp. 3d at 649.

In sum, the ALJ's RFC determination was based on Matthew's subjective complaints, Matthew's activities of daily living, the objective treatment records, and the

opinions of multiple medical professionals.  *See* Docket Item 6 at 23-30.  Matthew's arguments boil down to a disagreement with the ALJ's weighing of the evidence, but it is "not the function of this Court to re-weigh evidence or consider *de novo* whether [Matthew] is disabled."  *Teena H. o/b/o N.I.K.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021); *see also Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review.").  Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole" and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence, and this Court will not second-guess it.  *Matta*, 508 F. App'x at 56.

## CONCLUSION

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Matthew's motion for judgment on the pleadings, Docket Item 7, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 8, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:          May 23, 2023
                Buffalo, New York


                                                    /s/ Lawrence J. Vilardo
                                                    _____
                                                    LAWRENCE J. VILARDO
                                                    UNITED STATES DISTRICT JUDGE